UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **Pulse Network LLC** | § | |
| | § | |
| *versus* | § | **Civil Action 4:14-cv-03391** |
| | § | |
| **Visa Inc.** | § | |

### DEFENDANT VISA'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

**SMYSER KAPLAN & VESELKA, L.L.P.**
Lee L. Kaplan
Attorney-in-Charge
State Bar No. 11094400
S.D. Id. No. 1840
700 Louisiana, Suite 2300
Houston, Texas 77002
(713) 221-2323
(713) 221-2320 (fax)
Email:   lkaplan@skv.com

**KEKER & VAN NEST LLP**
John W. Keker (*pro hac vice* pending)
Asim M. Bhansali
S.D. Id. No. 22670
633 Battery Street
San Francisco, CA 94111-1809
Telephone: (415) 391-5400
Fascimile   (415) 397-7188
Email: jkeker@kvn.com
Email: amb@kvn.com

**ARNOLD & PORTER LLP**
Mark R. Merley (*pro hac vice* pending)
555 12th Street, N.W.
Washington, DC 20004
Telephone:   (202) 942-5000
Facsimile:   (202) 942-5999
Email:       mark.merley@aporter.com

ATTORNEYS FOR DEFENDANT
VISA INC.

498745.1

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** .................................................................................................... ii

**INTRODUCTION** ........................................................................................................................ 1

**BACKGROUND** .......................................................................................................................... 2

    A.    History of Litigation ............................................................................................... 2

    B.    The Durbin Amendment ......................................................................................... 4

**STANDARD OF REVIEW** ......................................................................................................... 5

**ARGUMENT** ................................................................................................................................ 5

    A.    Pulse's Challenges To FANF And PAVD Should Be Dismissed Because Pulse Fails To Allege Either Standing Or Antitrust Injury ............................................ 6

        1.    Pulse Lacks Standing To Complain About Supposedly Higher Fees That Would Benefit Pulse And That Pulse Does Not Pay ............................................ 6

        2.    Pulse Has Not Alleged Antitrust Injury, Because The Harm Pulse Claims From FANF And PAVD Flows From *Increased* Competition .............................. 8

    B.    Pulse's Allegations About Visa's Merchant Agreements Do Not State A Claim ... 11

    C.    Pulse's State Law Claims Fail For The Same Reasons ............................................. 14

**CONCLUSION** ........................................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases:**                     **Page(s):**

*Amacker v. Renaissance Asset Mgmt. LLC*,
   657 F.3d 252 (5th Cir. 2011) ...........................................................................................5

*Apani Southwest, Inc. v. Coca-Cola Enter., Inc.*,
   300 F.3d 620 (5th Cir. 2002) .........................................................................................14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................................5

*Atl. Richfield Co. v. USA Petro. Co.*,
   495 U.S. 328 (1990) ........................................................................................................6

*B&H Med. v. ABP Admin., Inc.*,
   526 F.3d 257 (6th Cir. 2008) .........................................................................................12

*Bailey v. Shell W. E & P, Inc.*,
   555 F. Supp. 2d 767 (S.D. Tex. 2008) ........................................................................6, 9

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................................................5

*Blackburn v. City of Marshall*,
   42 F.3d 925 (5th Cir. 1995) .............................................................................................5

*Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*,
   509 U.S. 209 (1993) ........................................................................................................9

*Brown Shoe Co. v. United States*,
   370 U.S. 294 (1962) ........................................................................................................9

*Brunswick Corp. v. Pueblo Bowl-A-Mat, Inc.*,
   429 U.S. 477 (1977) ....................................................................................................8, 9

*Bustos v. Martini Club Inc.*,
   599 F.3d 458 (5th Cir. 2010) ...........................................................................................5

*Cargill, Inc. v. Monfort of Colo., Inc.*,
   479 U.S. 104 (1986) ....................................................................................................8, 9

*Cascade Health Solutions v. Peacehealth*,
   515 F.3d 883 (9th Cir. 2007) .........................................................................................12

*Discover Fin. Serv. v. Visa U.S.A. Inc.*,
    598 F. Supp. 2d 394 (S.D.N.Y. 2008) .................................................................. *passim*

*Fedway Assocs v. United States Treasury*,
    976 F.2d 1416 (D.C.Cir. 1992) ................................................................................11

*Gonzalez v. Insignares*,
    No. C84-1261A, 1985 WL 2206 (N.D. Ga. June 27, 1985) ....................................12

*Henderson Broad. Corp. v. Houston Sports Ass'n, Inc.*,
    659 F. Supp. 109 (S.D. Tex. 1987) ..........................................................................14

*Indeck Energy Services, Inc. v. Consumers Energy Comp.*,
    250 F.3d 972 (6th Cir. 2000) ............................................................................7, 10

*Kuck v. Bensen*,
    647 F. Supp. 743 (D. Me. 1986) ..............................................................................12

*Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) .......................................................................................6, 8, 12

*NicSand, Inc. v. 3M Co.*,
    507 F.3d 442 (6th Cir. 2007) .................................................................................6, 7

*Omega Envtl., Inc. v. Gilbarco, Inc*,
    127 F.3d 1157 (9th Cir. 1997) .................................................................................12

*Port Duck & Stone Corp. v. Oldcastle Ne., Inc.*,
    507 F.3d 117 (2d Cir. 2007) ......................................................................................7

*R.J. Reynolds Tobacco Co. v. Philip Morris Inc.*,
    199 F. Supp. 2d 362 (M.D.N.C. 2002) ....................................................................12

*SCFC ILC, Inc. v. Visa USA, Inc.*,
    36 F.3d 958 (10th Cir. 1994) ..............................................................................3, 11

*Sewell Plastics, Inc. v. Coca-Cola Co.*,
    720 F. Supp. 1196 (W.D.N.C. 1989) .......................................................................12

*Star Tobacco, Inc. v. Darilek*,
    298 F. Supp. 2d 436 (E.D. Tex. 2003) .....................................................................14

*Stearns Airport Equip. Co., Inc. v. FMC Corp.*,
    170 F.3d 518 (5th Cir. 1999) .....................................................................................9

*Stop & Shop Supermarket Co. v. Blue Cross & Blue Shield of R.I.*,
    373 F.3d 57 (1st Cir. 2004) ......................................................................................12

498745.1

*Tampa Electric Co. v. Nashville Coal Co.*,
   365 U.S. 320 (1961) .................................................................................................. 12

*TCA Bldg. Co. v. Nw. Res. Co.*,
   873 F. Supp. 29 (S.D. Tex. 1995) ............................................................................... 12

*The Treasurer, Inc. v. Phila. Nat'l Bank*,
   682 F. Supp. 269 (D. N.J. 1988) ................................................................................... 8

*United States v. Visa U.S.A. Inc.*,
   344 F.3d 229 (2d Cir. 2003) .......................................................................................... 3

*W. Parcel Express v. United Parcel Serv. of Am., Inc.*,
   190 F.3d 974 (9th Cir. 1999) ...................................................................................... 11

## Statutes, Rules and Regulations

Fed. R. Civ. P. 12(b)(6) ................................................................................................... 1, 5, 14

2 Tex. Bus. § Comm. Code Ann. § 15.04(a) ........................................................................ 14

2 Tex. Bus. § Comm. Code Ann. § 15.04(b)(4) .................................................................... 14

## INTRODUCTION

Pulse attacks Visa for doing the very things the antitrust laws aim to foster: reducing prices and increasing customer choice. Pulse claims that Visa violated the antitrust laws by (i) lowering per-transaction fees to merchants and (ii) increasing choice for merchants by enabling transactions on Visa debit cards to be authenticated by either a PIN or a signature, and not just a signature.[1] Visa requests that the Court dismiss Pulse's Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). In its 92-page Complaint, Pulse fails to allege antitrust injury, antitrust standing, or foreclosure of a substantial share of a relevant market. Costly litigation should not proceed in the face of these legal deficiencies.

Pulse's Complaint fails the principle that the antitrust laws exist to protect competition rather than competitors. As a matter of law, Pulse cannot establish antitrust injury by complaining about Visa's offering merchants lower prices (absent predatory, below-cost pricing, which Pulse does not allege). Pulse apparently recognizes this problem, because simultaneously with claiming harm to itself from Visa's *lower per-transaction* fees, Pulse claims that Visa charged *higher overall* prices to merchants and issuers. But that allegation fails under established law as well, because a competitor has no standing to complain about another competitor's higher prices: it does not pay those prices and stands to benefit from higher prices. Likewise, Pulse cannot complain about Visa's offering merchants more choices for routing debit transactions, because doing so increases competition and does not result in Pulse paying allegedly higher prices. Pulse also cannot complain about Visa's volume discount agreements

---

[1] Pulse's Complaint contains detailed allegations about how the debit industry works, the supposed differences between "signature" debit and "PIN" debit, and who the various players are in the debit industry (networks, merchants, issuers, acquirers, and cardholders). In the interest of brevity, this brief does not repeat Pulse's allegations. *See generally* Compl. ¶¶ 22-56. For the Court's convenience, we have attached an Appendix — Glossary of Debit Terms drawn from the Complaint that outlines Pulse's allegations about how the debit industry operates.

2

with merchants when Pulse does not allege that they foreclose a substantial share of the alleged market.

Pulse's complaints are not new: its parent company Discover Financial Services ("Discover") has spent much of the past 25 years complaining in court, to federal regulators, and to Congress about how Visa competes for the business of banks, merchants, and cardholders. Most recently, Discover filed similar debit monopolization claims in 2004 in the Southern District of New York on Pulse's behalf. Those debit monopolization claims concluded in 2008 with the Court holding, on summary judgment, that Discover/Pulse could not complain about Visa's low prices to its customers and that Visa did not violate the antitrust laws by offering even lower prices if banks issued debit cards that included only Visa-affiliated networks.

Then in 2010, Congress intervened in the debit industry with the so-called Durbin Amendment to the Dodd-Frank Act. Among other things, Congress implemented price controls on "interchange" fees for debit products, required that competing debit networks (of which Pulse is one) be included on Visa-branded debit cards, and gave merchants the ability to choose the debit network that would process their transactions. Pulse does not, and cannot, allege that Visa did anything to violate the Durbin Amendment. Instead, Pulse alleges that Visa is offering merchants lower per-transaction fees and more choices. Pulse's allegations show that competition is alive and healthy.

## BACKGROUND

A.  **History of Litigation**

Pulse and its parent company Discover have spent much of the past 25 years trying to obtain from courts and regulators what they could not accomplish by competing in the marketplace.

2

*MountainWest* **Litigation**: Within three years of its creation, Discover applied for membership in Visa (which was then an association of banks with payment card businesses) to take advantage of Visa's better merchant acceptance and brand while still competing with Visa as a network; Visa refused to admit its competitor. *See SCFC ILC, Inc. v. Visa USA, Inc.*, 36 F.3d 958, 961 (10th Cir. 1994) ("*MountainWest*"). Years of litigation followed, with the Tenth Circuit ultimately rejecting all of Discover's claims because "a producer's loss is no concern of the antitrust laws, which protect consumers from suppliers rather than suppliers from each other." *Id.* at 972 (internal quotations omitted). The Tenth Circuit concluded that "[w]hatever currents [Discover] imagines Visa USA has wrongly created, we believe can be better corrected by the marketplace itself." *Id.*

**Department of Justice ("DOJ") Litigation**: In 1998, DOJ successfully sued Visa and MasterCard over rules — ByLaw 2.10(e) in the case of Visa — that DOJ claimed prevented bank members of Visa and MasterCard from issuing American Express or Discover cards. *See United States v. Visa U.S.A. Inc.*, 344 F.3d 229, 240 (2d Cir. 2003) ("DOJ Litigation"). As a result, banks have had the ability to issue Discover cards for the past decade.

*Discover* **Litigation**: Discover next sued Visa in 2004. The case was assigned to the Honorable Barbara Jones, who had ruled against Visa in the DOJ Litigation, where she acted as fact-finder. Discover's claims based on ByLaw 2.10(e) settled in 2008 for a substantial sum.

Discover also unsuccessfully alleged monopolization in a debit market on behalf of Pulse. Discover threw at Judge Jones the same litany of debit-related conduct by Visa over 25 years that makes up much of the rhetoric in Pulse's current Complaint. *Compare Discover Fin. Services v. Visa U.S.A. Inc.*, 598 F. Supp. 2d 394, 405 (S.D.N.Y. 2008), *with* Compl. ¶¶ 1, 11-12, 57-76. Among other things, Discover alleged that "Visa maintained its dominant position by

3

entering into long term . . . deals with major banks to make Interlink[2] their exclusive, or in some cases primary, PIN debit network." *Discover*, 598 F. Supp. 2d at 405. Discover further argued that Visa "offered large, unprofitable payments to certain banks to encourage them to convert to Interlink and stop dealing with competing debit networks," such as Pulse. *Id*.[3]

Judge Jones held that Discover failed to make out a debit monopolization claim. She explained that "[f]or exclusive dealing, foreclosure levels are unlikely to be of concern where they are less than 30 or 40 percent . . . low numbers make dismissal easy. . . . ." *Id*. at 406 (internal quotation and citations omitted). Judge Jones found that none of Visa's agreements with banks, or any of Visa's other alleged conduct, foreclosed Pulse from competing because, among other things, Visa's agreements "were exclusive only vis-à-vis MasterCard and did not foreclose Discover at all." *Id*. Judge Jones also considered whether Visa's pricing to bank issuers of debit cards could be deemed predatory. She found no allegations or facts to support such a claim and, accordingly, there was nothing unlawful about Visa's offering discounts to win business. *Id*. at 405-06.[4]

**B.     The Durbin Amendment**

Pulse relies on the Durbin Amendment to come back to court and try again. Although Pulse does not allege that Visa has violated the Durbin Amendment in any way, brief background about the Durbin Amendment is appropriate here.

*First*, the Durbin Amendment imposed price controls on a key price component (interchange) paid by a card-accepting merchant's bank to the card issuing bank. *See* Compl.

---

[2] Interlink is the brand name of Visa's separate "PIN" debit network.

[3] Pulse repeats these allegations in Paragraphs 12 and 223(4) of its Complaint but omits that Judge Jones held that these allegations do not support an antitrust claim.

[4] Judge Jones expressly held that Visa's Bylaw 2.10(e) provided no "link" to support Discover/Pulse's debit monopolization claims. *Id*. at 405.

¶ 81(a). **Second**, it mandated that "issuers and payment card networks . . . give merchants control of the routing of debit network transactions." *See* Compl. ¶ 81(b). **Third**, it mandated that each debit card offer the ability to route transactions over two unaffiliated networks, meaning that a debit card with "Visa" on the front must also include another debit network (generally PIN debit) that is not affiliated with Visa — instead of having cards that include only Visa signature debit and Interlink (Visa's separate PIN debit network). *See* Compl. ¶ 81(c).

## STANDARD OF REVIEW

Under Rule 12(b)(6), the Court should "accept[] all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiff" to determine whether when "taken as true, [they] state a claim that is plausible on its face." *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010) (internal quotation marks omitted); *Amacker v. Renaissance Asset Mgmt. LLC*, 657 F.3d 252, 254 (5th Cir. 2011). A complaint fails if it offers only "labels and conclusions," or "a formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief." *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995).

## ARGUMENT

Each count in the Complaint hinges on some or all of three forms of conduct: Visa's Fixed Acquirer Network Fee ("FANF"), Visa's enhancing its debit products through PIN-Authenticated Visa Debit ("PAVD"), and Visa's agreements with merchants (and acquiring banks). Pulse has not stated an antitrust claim based on this conduct. The Complaint should be dismissed in its entirety.

### A. Pulse's Challenges To FANF And PAVD Should Be Dismissed Because Pulse Fails To Allege Either Standing Or Antitrust Injury

Pulse's challenges to FANF and PAVD should be dismissed for two separate but related reasons. First, Pulse alleges that competition has been harmed because Visa supposedly increased overall fees paid by merchants and banks through FANF and PAVD. Pulse lacks standing to complain about supposedly higher fees paid by others. Pulse does not pay the allegedly higher debit network fees that Pulse claims merchants and banks face. And, as a competing network, Pulse stands to benefit from higher network fees. Second, Pulse has not alleged antitrust injury. The only harm to itself that Pulse alleges flows from *lower* per-transaction prices (accompanying FANF) and *increased* competition (caused by PAVD). For each of these reasons, Pulse's claims related to FANF and PAVD should be dismissed.

#### 1. Pulse Lacks Standing To Complain About Supposedly Higher Fees That Would Benefit Pulse And That Pulse Does Not Pay

A competitor lacks standing to challenge conduct that allegedly results in higher prices, because higher prices generally work to the competitor's advantage. This Court has held that when a plaintiff "would benefit" from higher prices charged by the defendant, the plaintiff "has no antitrust injury" and thus "lacks standing to bring an antitrust claim." *Bailey v. Shell W. E & P, Inc.*, 555 F. Supp. 2d 767, 776 (S.D. Tex. 2008) (Hughes, J.); *see Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 335-38 (1990) (competitor not injured by price-fixing conspiracy because "higher ARCO prices would have worked to [plaintiff's] advantage"); *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 583 (1986) ("[A]s petitioners' competitors, respondents stand to gain from any conspiracy that raises the market price . . . .").

Similarly, a plaintiff who does not buy from an alleged monopolist lacks standing to complain about higher prices paid by customers in the market. *See NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 457-48 (6th Cir. 2007) (holding that competitor cannot sue based on an alleged

6

increase in "*retail* prices") (emphasis in original); *Port Duck & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 123-24 (2d Cir. 2007) (holding that a plaintiff who does not buy from a monopolist lacks standing). When a competitor alleges that others in the market have been harmed by higher prices caused by an antitrust violation, it is for "the direct victim of the alleged antitrust violation . . . [to] prosecute its own cause of action," not the competitor. *Indeck Energy Services, Inc. v. Consumers Energy Co.*, 250 F.3d 972, 977 (6th Cir. 2000).

Under this authority, Pulse lacks standing to assert claims based on FANF. Pulse characterizes FANF as anti-competitive because the "FANF price structure means *higher* overall network fees" that are supposedly "imposed on **merchants and acquirers**." Compl. ¶¶ 19, 113 (second emphasis added). "Network fees are the fees charged by debit networks to their customers on both the merchant and issuing sides of their business." Compl. ¶ 46. "[N]etwork fees constitute revenues for a debit network and are how they primarily earn profits." Compl. ¶ 46. Pulse itself is a debit network. Compl. ¶ 2. Thus, Pulse — like every other debit network — would *benefit* from (and not be harmed by) supposedly higher network fees charged to "merchants and acquirers," because that would allow Pulse to charge higher prices as well. In any event, Pulse does not pay these supposedly higher fees, because it is neither a merchant nor an acquirer.

With respect to PAVD, Pulse again lacks standing to challenge allegedly higher prices that it does not pay. Pulse alleges that Visa is requiring issuers of Visa-branded debit cards to offer merchants at least two network options over which to route a PIN-authenticated debit transaction (Visa and a competing PIN network such as Pulse). *See* Compl. ¶¶ 91, 93. Pulse alleges that *issuers* of Visa-branded debit cards face supposed "threats, fines, and penalties" to compel compliance with PAVD," which supposedly "injures **card issuers** and **cardholders**."

7

Compl. ¶ 16 (emphasis added).  According to Pulse, the anti-competitive effect is that "*issuers* are paying higher prices for processing PIN-authenticated debit transactions."  Compl. ¶ 276 (emphasis added).  But Pulse does not face the alleged PAVD mandate, is neither an issuer nor a cardholder, and thus does not pay allegedly higher prices at all.

These claims are analogous to those in *The Treasurer, Inc. v. Phila. Nat'l Bank*, 682 F. Supp. 269, 272 (D.N.J. 1988), in which the court considered whether one ATM network[5] had standing to challenge the merger of two other ATM networks based, in part, on an allegation that the defendant ATM network's "fees are higher than industry average."  The Court explained that "a competitor cannot suffer antitrust injury from its rival's charging higher prices," because "competitors have only to gain from their rivals' higher pricing schemes."  *Id*. at 272 n.2 (citing *Matsushita*, 475 U.S. at 582-83).  Thus, even accepting as true Pulse's allegation that FANF and PAVD have resulted in higher network fees to "merchants and acquirers" and higher prices to "card issuers and cardholders," Compl. ¶¶ 16, 19, 113, Pulse lacks standing to challenge allegedly higher prices Pulse does *not* pay.

### 2. Pulse Has Not Alleged Antitrust Injury, Because The Harm Pulse Claims From FANF And PAVD Flows From *Increased* Competition

Pulse alleges that ***lower per-transaction*** fees accompanying FANF and increased competition resulting from PAVD cause harm to Pulse.  But an antitrust claim requires more than an allegation of harm.  The alleged harm must constitute plausible "*antitrust* injury, which is to say injury of the type the antitrust laws were intended to prevent."  *Brunswick Corp. v. Pueblo Bowl-A-Mat, Inc.*, 429 U.S. 477, 489 (1977) (emphasis in original); *see also Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 111 (1986).  As courts often have said, the antitrust laws

---

[5] ATM networks are the precursor to PIN debit networks.  *See* Compl. ¶ 30.

protect "competition, not competitors" and provide no protection from harm caused by enhanced competition. *Brunswick*, 429 U.S. at 488 (citing *Brown Shoe Co. v. United States*, 370 U.S. 294, 320 (1962)); *accord Bailey*, 555 F. Supp. 2d at 776 ("Antitrust laws are designed to increase competition."). Because Pulse's Complaint demonstrates that Pulse's alleged harm from FANF and PAVD flows from increased competition, its claims based on FANF and PAVD must be dismissed.

Pulse alleges that FANF is a flat fee that merchants pay for the right to accept Visa-branded credit cards or debit cards, or both. *See* Compl. ¶¶ 17, 101. In other words, Pulse alleges that FANF is effectively a fee that is paid for the right to post a "We Accept Visa" sign in the window and alleges it will generally be the same amount regardless whether a merchant processes zero dollars in Visa debit transactions or $10 million. Compl. ¶¶ 19, 102-105. Pulse alleges that a separate per-transaction fee is charged for each debit transaction processed on the Visa network. Compl. ¶ 105. With respect to *those* fees, Pulse admits that Visa has introduced "lower per-transaction fees as part of its new price structure" that includes FANF. Compl. ¶ 18.

Tellingly, nowhere in its Complaint does Pulse allege that Visa is pricing below Visa's costs, and otherwise makes no effort to allege predatory pricing. *Cf. Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 224 (1993) (holding that predatory pricing requires pricing below marginal or average variable cost *and* a dangerous probability of recouping investment after driving rivals from the market). A plaintiff challenging a rival's *low* prices must allege, at a minimum, that "the prices at issue were below an appropriate measure of its rival's costs." *Stearns Airport Equip. Co., Inc. v. FMC Corp.*, 170 F.3d 518, 532 (5th Cir. 1999). In any event, Pulse also does not explain why the alleged flat fee FANF — paid for the ability to accept Visa cards — would cause a merchant to elect a higher per-transaction fee to

route a transaction to Visa if Pulse were to offer a lower per-transaction price to route to Pulse. Nor does Pulse allege that any merchant has told Pulse that the merchant is routing transactions to Visa because of FANF or is routing to Visa when Pulse offers lower per-transaction fees.

Pulse posits that "[t]he only way a rival network could make an offer that would allow a merchant to avoid the [FANF] price increase would be to persuade a merchant to drop Visa." Compl. ¶ 19. But Pulse is not suing on behalf of merchants who want to avoid the alleged FANF "price increase." Pulse is suing on behalf of itself for its alleged lost profits that supposedly flow from FANF. *See, e.g.*, Compl. ¶¶ 227, 236, 244, 253, 262. For Pulse, any harm occurs because Pulse must offer lower per-transaction fees to win business. In other words, Pulse's problem is that it does not want to have to cut its per-transaction price in response to Visa's prices. That is not the purpose of the antitrust laws. *See Indeck Energy*, 250 F.3d at 978-79 (explaining that competitors "have no statutory right to compete in the economic marketplace on their own terms and in such a manner as to accumulate expected profits.").

Pulse dislikes PAVD for similar reasons. PAVD allegedly operates to provide merchants a second PIN debit authentication option even when Pulse has convinced an issuer to include Pulse on the bank's Visa-branded debit cards. *See* Compl. ¶ 95. Specifically, Pulse alleges that issuers of Visa-branded debit cards must now allow merchants, ***if a merchant so chooses***, to route a transaction over Visa's historically signature-based debit network when a cardholder seeks to authenticate the transaction using a PIN instead of a signature (or other authentication methods). *See* Compl. ¶ 16, 53, 91. When a merchant has a choice of PIN debit authentication options, debit networks must compete for that merchant's routing decision. *See* Compl. ¶¶ 53, 55, 81(b). And merchants will typically make that decision "based on the per-transaction pricing it receives from the different PIN debit networks." Compl. ¶ 55.

10

In Pulse's preferred world, Pulse would be able to convince bank issuers to include only Pulse as a PIN debit option and thereby limit the merchant's PIN choice to Pulse. Compl. ¶ 95. This is not antitrust injury.

* * *

Accepting as true Pulse's factual allegations about both FANF and PAVD, any harm Pulse claims to have suffered results from *increased* competition that the antitrust laws favor. The Tenth Circuit's observation about Discover in 1993 applies equally to Pulse's current claims: "a producer's loss is no concern of the antitrust laws, which protect consumers from suppliers rather than suppliers from each other." *MountainWest*, 36 F.3d at 972 (internal quotations omitted). All of Pulse's challenges to FANF and PAVD should be dismissed.

B. **Pulse's Allegations About Visa's Merchant Agreements Do Not State A Claim**

Pulse alleges that Visa's merchant (and acquirer) agreements lower prices to merchants in exchange for merchants' routing more debit volume to Visa. This complaint is analogous to Discover/Pulse's objections to Visa's volume discount agreements with bank issuers in the *Discover* litigation. As in *Discover*, Pulse's claims here should be dismissed for failure to allege foreclosure of a substantial share of a relevant market.

Offering customers lower prices through volume discount agreements provides significant pro-competitive benefits and thus is generally "legal under antitrust laws." *See, e.g.*, *W. Parcel Express v. United Parcel Serv. of Am., Inc.*, 190 F.3d 974, 976 (9th Cir. 1999) (citing *Fedway Assocs. v. United States Treasury*, 976 F.2d 1416, 1418 (D.C. Cir. 1992)). The antitrust laws "leave unhampered pricing practices that *might* benefit consumers, absent the *clearest* showing that an injury to the competitive process will result." *Cascade Health Solutions v. Peacehealth*, 515 F.3d 883, 902 (9th Cir. 2007) (emphasis added). "[C]utting prices in order to increase business often is the very essence of competition," and "mistaken inferences"

11

condemning price cuts "are especially costly, because they chill the very conduct the antitrust laws are designed to protect." *Matsushita*, 475 U.S. at 594.

Pulse has made no factual allegations that could plausibly establish an antitrust violation based on Visa's offering lower prices to merchants. In *Tampa Electric Co. v. Nashville Coal Co.*, the Supreme Court established that for exclusive dealing claims like Pulse alleges in Count Six, "the competition foreclosed by the contract must constitute a substantial share of the relevant market." 365 U.S. 320, 328 (1961). Exclusive dealing arrangements do not generally raise potential antitrust "concern where they are less than 30 or 40 percent" of a market. *Stop & Shop Supermarket Co. v. Blue Cross & Blue Shield of R.I.*, 373 F.3d 57, 68 (1st Cir. 2004).[6] Construing its allegations in the light most favorable to Pulse, Pulse does not allege a foreclosure share at all. Pulse alleges that "Visa has over 100 such volume agreements with key merchants and acquirers," Compl. ¶ 108, but makes no non-conclusory allegation that those agreements foreclose a "substantial share of the relevant market," *Tampa Electric* 365 U.S. at 328.

As an initial matter, as was the case in *Discover*, Pulse does not allege that the volume agreements it challenges are even exclusive. In the paragraphs that it labels "Exclusive Dealing" (Count Six), Pulse fails to use the word "exclusive" to describe the agreements. *See* Compl. ¶¶ 263-70. Elsewhere, in alleging the details of these agreements on "information and belief," Pulse alleges only that merchants are offered "***incentives*** from Visa in exchange for routing commitments," Compl. ¶ 107 (emphasis added), and that the agreements "target" certain volume.

---

[6] *See also B&H Med. v. ABP Admin., Inc.*, 526 F.3d 257, 267 (6th Cir. 2008) (same); *Omega Envtl., Inc. v. Gilbarco, Inc.*, 127 F.3d 1157, 1162-65 (9th Cir. 1997) (no foreclosure at 38%); *R.J. Reynolds Tobacco Co. v. Philip Morris Inc.*, 199 F. Supp. 2d 362, 390-91 (M.D.N.C. 2002) (same at 34%); *TCA Bldg. Co. v. Nw. Res. Co.*, 873 F. Supp. 29, 39 (S.D. Tex. 1995 (same at 33%); *Sewell Plastics, Inc. v. Coca-Cola Co.*, 720 F. Supp. 1196, 1212-14 (W.D.N.C. 1989) (same at 34-40%); *Kuck v. Bensen,* 647 F. Supp. 743, 746 (D. Me. 1986) (37%); *Gonzalez v. Insignares,* No. C84-1261A, 1985 WL 2206, at *2 (N.D. Ga. June 27, 1985) (same at 40%).

Compl. ¶ 267; *see also* Compl. ¶ 108 (speculating about terms of volume agreements, but failing to allege that any term requires exclusivity, precludes a merchant from choosing to route on Pulse, or limits a merchant from terminating at will or routing to another network without terminating if offered a better price). Pulse does not even allege that a single one of the merchants or acquirers "targeted" by Visa has refused to do business with Pulse. This Court can therefore follow Judge Jones and dismiss Pulse's "exclusive dealing" claim for failure to allege that the agreements foreclose Pulse at all. *See Discover*, 598 F. Supp. 2d at 406.

The closest Pulse comes to alleging a level of foreclosure is Paragraph 267. Pulse alleges there that "historically"[7] Visa processed "70-80% of all *signature* debit network transactions." Compl. ¶ 267 (emphasis added). Pulse appears purposefully to ignore PIN debit volume because including PIN debit volume would bring down Visa's alleged overall market share. Moreover, Pulse carefully does *not* claim that even the alleged 70-80% share of signature debit is covered by Visa's agreements: it alleges only that "a substantial percentage of *that* volume" is "effectively *target[ed]*" by the "volume agreements." Compl. ¶ 267 (emphasis added). Pulse also does not define "substantial percentage."

The sum of all this careful pleading — in which Pulse does not allege that even a majority of Visa's alleged 70-80% share is targeted by Visa's volume agreements — is that Pulse has not alleged that these volume agreements "target" (whatever that term means) 40% of a relevant market. Allegations of "targeting" without any allegation of actual foreclosure, and without identifying a single merchant or acquirer that has refused to do business with Pulse as a result of the alleged agreements, do not state a claim under the antitrust laws. As Judge Jones noted the last time a court considered Discover/Pulse's failure to allege the amount of supposed

---

[7] Pulse does not explain what "historically" means.

foreclosure, this failure "make[s] dismissal easy." *Discover*, 598 F. Supp. 2d at 406 (quoting *Stop & Shop Supermarket*, 373 F.3d at 68); *see also Star Tobacco, Inc. v. Darilek*, 298 F. Supp. 2d 436, 447 (E.D. Tex. 2003) (dismissal for failure to make "any allegation regarding the share of that market" that could be "more than conclusory").

### C. Pulse's State Law Claims Fail For The Same Reasons

Pulse's Texas Free Enterprise and Antitrust Act (Count Nine) and tortious interference (Count Ten) claims depend entirely on Pulse's federal antitrust claims and therefore should be dismissed for the same reasons. *See Apani Southwest, Inc. v. Coca-Cola Enterprises, Inc.*, 300 F.3d 620, 628, 635 (5th Cir. 2002) (dismissing both state antitrust claims with federal antitrust claims because statutes are "interpret[ed] . . . in harmony," and holding that tortious interference "claim must fail for the same reason . . . — the absence of an unlawful [antitrust] act"); *Henderson Broad. Corp. v. Houston Sports Ass'n, Inc.*, 659 F. Supp. 109, 111-12 (S.D. Tex. 1987) (Hughes, J.) (dismissing state antitrust claims for same reasons as federal claims) (citing 2 Tex. Bus. & Com. Code Ann §§ 15.04(a) and (b)(4)).

### CONCLUSION

For the foregoing reasons, Pulse's Complaint should be dismissed in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dated January 23, 2015

Respectfully submitted,

**SMYSER KAPLAN & VESELKA, L.L.P.**

By: */s/ Lee L. Kaplan*
 Lee L. Kaplan
 Attorney-in-Charge
 State Bar No. 11094400
 S.D. Id. No. 1840
 700 Louisiana, Suite 2300
 Houston, Texas 77002
 (713) 221-2323
 (713) 221-2320 (fax)
 Email: lkaplan@skv.com

**ATTORNEY-IN-CHARGE FOR VISA INC.**

**OF COUNSEL:**

**KEKER & VAN NEST LLP**
John W. Keker (*pro hac vice* pending)
Asim M. Bhansali
S.D. Id. No. 22670
633 Battery Street
San Francisco, CA 94111-1809
Telephone: (415) 391-5400
Fascimile (415) 397-7188
Email: jkeker@kvn.com
Email: amb@kvn.com

**ARNOLD & PORTER LLP**
Mark R. Merley (*pro hac vice* pending)
555 12th Street, N.W.
Washington, DC 20004
Telephone: (202) 942-5000
Facsimile: (202) 942-5999
Email: mark.merley@aporter.com

15

498745.1